UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACIE ANNE SEBASTIAN,

    Plaintiff,

v.                                          Case No. 1:13-cv-792
                                              Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                                 /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on August 25, 1971 (AR 176).[1] She alleged a disability onset date of December 31, 2004 (AR 176). Plaintiff graduated from high school and completed CENA (certified nursing assistant) classes (AR 174). She had previous employment as a certified nursing assistant and as a stock clerk in a retail store (docket no. 170). Plaintiff identified her disabling conditions as back problems and depression (AR 169). On January 9, 2012, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 10-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I.  LEGAL STANDARD**

---

[1] Citations to the administrative record will be referenced as (AR "page #").

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-

step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010 (AR 12). Although plaintiff alleged a disability onset date of December 31, 2004, the ALJ found that she engaged in substantial gainful activity from April 2007 through August 2007 (AR 12). Nevertheless, the ALJ found that there has been a continuous 12-month period during which she did not engage in substantial gainful activity (AR 13). At step two, the ALJ found that plaintiff suffered from severe impairments of: degenerative disc disease; chronic pain syndrome; depression; and anxiety (AR 13). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listing 1.04 (disorders of the spine), 12.04 (affective disorders) and 12.06 (anxiety related disorders) (AR 13-15).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant should have a sit/stand option as long as she was not off task more than 10% of the time. Additionally, the claimant can frequently balance, stoop, crouch, crawl, climb, reach, handle and finger. Moreover, the claimant is limited to one and two-step tasks, performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and with few, if any, workplace changes. The claimant can have only occasional interaction with co-workers.

(AR 15). The ALJ also found that plaintiff was unable to perform her past relevant work (AR 23).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 23-24). Specifically, plaintiff could perform the following sedentary work: sorter (98,000 jobs in the national economy and 1,400 jobs in Michigan); assembler

(106,000 jobs in the national economy and 3,200 jobs in Michigan); and bench packager (123,000 jobs in the national economy and 4,300 jobs in Michigan) (AR 23-24). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 26, 2009 through January 9, 2012 (the date of the decision) (AR 24).

### III. ANALYSIS

Plaintiff has raised four issues on appeal:

**A.    Did the ALJ fail to follow the "durational requirement" standard in finding that plaintiff's fibromyalgia was non-severe?**

At the second step of the sequential process, the ALJ found that plaintiff's fibromyalgia was not a severe impairment stating that:

> The claimant's medically determinable impairment of fibromyalgia does not cause more than minimal limitation in the claimant's ability to perform basic work activities and is therefore nonsevere. The claimant's fibromyalgia was diagnosed in June of 2011, only six months ago. (Exhibit 12F). Therefore, it does not meet the requisite durational requirement necessary for a severe impairment, which is 12 months, and therefore it is not a severe impairment.

(AR 13). Plaintiff contends that the ALJ improperly applied the 12-month "durational requirement." Defendant concedes that the ALJ erred with respect to the application of the durational requirement. *See* Defendant's Brief at p. 11 ("Although the ALJ mistakenly stated that an impairment is severe only if it lasts for at least twelve months, she nonetheless properly determined that Plaintiff's '[did] not cause more than a minimal limitation in [Plaintiff's] ability to perform basic work activities and [was], therefore, non-severe.'").

The ALJ's error does not require reversal. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). Upon determining

that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Serivces*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Here, the ALJ found that plaintiff suffered from severe impairments of degenerative disc disease, chronic pain syndrome, depression, and anxiety (AR 13). The ALJ's failure to include fibromyalgia as a severe impairment at step two is legally irrelevant. Accordingly, plaintiff's claim of error should be denied.

> **B.     The ALJ found that plaintiff has two severe mental impairments, but did her RFC assessment fully consider the full impact of these impairments?**

Plaintiff contends that the ALJ's RFC assessment failed to take into account her severe mental impairments of depression and anxiety, because it did not include the ALJ's finding that she had "moderate difficulties" in concentration, persistence and pace (AR 14). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

As an initial matter, the finding referred to by plaintiff was made at step three of the

6

sequential evaluation process when the ALJ was required to determine whether plaintiff met the "paragraph B" requirements of listed impairments 12.04 and 12.06 (AR 14). This finding was not an RFC finding made at step four. *See* 20 CFR Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder").

As the court explained in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> Next, Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings. . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments []. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06. However, the ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10.

Furthermore, the ALJ's RFC took into account plaintiff's nonexertional limitations by limiting her "to one and two-step tasks, performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and with few, if any, workplace changes" and to having "only occasional interaction with co-workers" (AR 15). Unskilled

work, by definition, incorporates some non-exertional components, consisting of "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a) and 416.968(a). Such work involves simple and routine tasks. *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000). *See generally, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant "often" suffered problems with concentration, limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment). The vocational expert (VE) identified unskilled jobs consistent with this RFC (AR 23-24, 67-69). This claim of error should be denied.

### C. Did the ALJ violate SSR 96-8p in not considering the effect of the plaintiff's level I obesity on her ability to work?

Plaintiff contends that the ALJ failed to consider plaintiff's obesity, citing SSR 02-1p ("Evaluation of obesity") and SSR 96-8p ("Assessing residual functional capacity in initial claims").[2] Although the agency deleted obesity from the Listing of Impairments in 20 C.F.R., subpart P, Appendix 1, the Commissioner views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability. In her reply brief, plaintiff states (without citation to the record) that Dr. Solanki told her "to lose weight because of the additive effect it has on her symptoms." Plaintiff's Reply Brief at p. 2.

---

[2] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 498 (6th Cir. 2006), quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 549 (6th Cir.2004) (citations omitted).

> SSR 02-1p provides in pertinent part:
>
>> [Even] though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-01p, 2002 WL 34686281 (Sept. 12, 2002). While SSR 02-1p provides guidance for the ALJ in evaluating a claimant's obesity, it does not create a separate procedure requiring the Commissioner to consider obesity in every case.

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006).

Here, the ALJ did not address plaintiff's obesity. This is understandable because plaintiff did not claim obesity as an impairment in her original disability report or her disability report on appeal (AR 169, 206-11). Nor did plaintiff present testimony at her administrative hearing with respect to limitations caused by her obesity (AR 29-73). At the hearing, plaintiff's attorney did not address plaintiff's alleged obesity, summarizing her condition as "intractable chronic low back pain from degenerative disc disease, which has affected her with depression and anxiety," fibromyalgia which "limits her to [sic] so much that she is unable to hold a full time competitive

job," and the inability to work which "has caused a great deal of stress in her life and depression" (AR 34). Plaintiff now states that her treating physician, Mohammed Siddiqui, M.D., diagnosed her with chronic pain syndrome, GERD, anxiety, chronic depression, peripheral neuropathy and insomnia and that the doctor continues to treat plaintiff for pain, depression and anxiety. Plaintiff's Brief at pp. 3-4.  While plaintiff also states that Dr Siddiqui discussed plaintiff's obesity with her and prescribed medication for weight control, she does not cite any record to support this claim. *Id.* at p. 14.

Defendant points out that plaintiff does not cite any evidence demonstrating that she had limitations due to obesity that would preclude her from performing basic work activities. Defendant's Brief at p. 12.  In this regard, a consultative examination by Bharti Sachdev, M.D. on December 1, 2009, found that while plaintiff had a history of lower back pain, her examination was "completely negative" (AR 427).  The ALJ referred to this examination, in which the doctor noted that plaintiff was 5'4 3/4" tall, weighed 152 pounds, had a body mass index of 26 kg/m2, and had lost 20 pounds in the past year (AR 18, 426).  Dr. Sachdev did not mention that plaintiff was obese nor did the doctor mention of any limitations due to obesity.  Based on this record, obesity was not a part of plaintiff's claim, and this claim of error should be denied.

> **D. Did the ALJ fail to comply with 20 C.F.R. § 404.1527 in not according adequate weight to the opinion of the plaintiff's treating physician and to consider the various factors set forth in 20 C.F.R. § 404.1527(d) in evaluating the opinion of the treating physician?**

Finally, plaintiff contends that the ALJ did not give adequate weight to the opinions of his treating physicians. In her decision, the ALJ reviewed plaintiff's longitudinal record at length, including plaintiff's treatment for back pain with Dr. Kuiper (who noted that plaintiff was

inappropriately using Vicodin and would not prescribe any more narcotic medications), plaintiff's treatment for back pain and anxiety with her new physician Dr. Grove beginning in July of 2005, plaintiff's treatment for chronic pain syndrome with Dr. Siddiqui in 2006, and plaintiff's treatment with Dr. Solanki for chronic pain and leg swelling in June 2011 (AR 17-21).  The ALJ, however, only addressed the opinions (i.e., the treatment notes and recommendations) of Dr. Siddiqui:

> As for the opinion evidence, I have reviewed the treatment notes and recommendations made by Dr. Siddiqui, as he is the claimant's treating physician. While the record does not contain any formal opinions by Dr. Siddiqui regarding the claimant's alleged impairments, his lengthy treatment relationship with the claimant, as well as his overall familiarity with her condition entitles his treatment notes and recommendations to some weight.  However, his notes reveal the claimant's having some difficulties with both her physical and mental impairments; overall, the notes and recommendations do not reveal the need for a more restrictive residual functional capacity than what is provided above.

(AR 21).

Plaintiff does not address the ALJ's evaluation of the physician's opinions in any detail, addressing that evaluation in a single paragraph as follows:

> Dr. Siddiqui took over treatment of plaintiff's care from Dr. Grove in 2006 when she had already established her condition as severe anxiety and chronic pain from disc disease in LS spine.  Dr. Grove treated her and found her disabled from working. (AR 346-352)   Dr. David Lambrix, M.D., another former treating physician, found her disabled as did Dr. Matthew Kuiper, M.D., of the Southern Michigan Pain Clinic. (AR 320-326) Dr. Siddiqui's treatment notes do not show that he was able to improve her condition with continued prescribed methadone.  The other treating physician's opinions were not analyzed, or in Dr. Kuiper's case, it was not accurately analyzed.  The ALJ seemed to be concentrating only on plaintiff's over use of opiates at the time.

Plaintiff's Brief at pp. 17-18.  In an equally brief response, defendant states that neither Dr. Grove, Dr. Lambrix nor Dr. Siddiqui determined that plaintiff was disabled, and further states that plaintiff did not cite any findings from treating physicians which demonstrated disability.  Defendant's Brief at p. 16.

11

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good

reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff has not identified any particular record in which Dr. Grove (AR 346-52), Dr. Kuiper (AR 320-26) or Dr. Lambrix (AR 327-45) found her disabled from working after her alleged onset date.[3] In her brief, plaintiff states that Dr. Grove "believed her to be 'pretty much disabled,'" but there is no citation to support this statement. Plaintiff's Brief at . 6 (emphasis omitted). While plaintiff reported in January 2005 that she was unemployed as a certified nurses aide, having last worked full-time in December 2004 (AR 321), plaintiff does not point to any work restrictions in the record issued by these doctors since her alleged disability onset date of December 31, 2004. Since plaintiff does not address any other alleged error on the part of the ALJ with respect to Drs. Grove, Lambrix or Kuiper, the Court will limit its review to the ALJ's evaluation of Dr. Siddiqui's opinions.

The Court reaches a different result with respect to Dr. Siddiqui. As discussed, the ALJ reviewed Dr. Siddiqui's opinions as expressed in the doctor's "treatment notes and recommendations." However, as shown by the excerpt from the decision, the ALJ neither identified nor assigned weight to any particular opinion expressed by the doctor. Based on this record, the ALJ's review of Dr. Siddiqui's opinion did not meet the articulation standard in *Wilson*, which required her to give "good reasons" for the weight assigned to a treating source's opinion. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should review Dr. Siddiqui's records, identify the relevant opinions, and then evaluate those opinions consistent with the articulation standard in *Wilson*.

---

[3] The Court notes that some of the handwritten treatment notes are illegible.

13

**IV.     Recommendation**

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should review Dr. Siddiqui's records, identify the relevant opinions, and then evaluate those opinions consistent with the articulation standard in *Wilson*.


Dated:  September 3, 2014                      /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).